AUSAS:  MARGERY FEINZIG
JAMES MCMAHON

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

       - v. -

JASON BECKFORD and
ASHANTIA MAXWELL,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- X

:

:

:

:

:

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 1349, 1956(h)

COUNTY OF OFFENSE:
Dutchess

**7:26-mj-569**

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAN SMYTH, being duly sworn, deposes and says that he is a Special Agent with the
United States Attorney's Office for the Southern District of New York ("USAO"), and charges
as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

1.      From at least in or about January 2019 through the present**,** in the Southern
District of New York and elsewhere, JASON BECKFORD and ASHANTIA MAXWELL, the
defendants, and others known and unknown, willfully and knowingly, combined, conspired,
confederated and agreed together and with each other to commit wire fraud, in violation of Title
18, United States Code, Section 1343.

2.      It was a part and an object of the conspiracy that JASON BECKFORD and
ASHANTIA MAXWELL, the defendants, and others known and unknown, knowingly having
devised and intending to devise a scheme and artifice to defraud, and for obtaining money and
property by means of materially false and fraudulent pretenses, representations, and promises,
would and did transmit and cause to be transmitted by means of wire and radio communication
in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose
of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343,
to wit, BECKFORD, MAXWELL and others, using interstate and international phone calls, text
messages and emails, among other means, agreed to make and caused to be made false
statements to victims representing that they were bank investigators and law enforcement
officers and that the victims needed to transfer money out of their bank and investment accounts,
including by interstate and international wire transfers, to assist them in the conduct of
investigations, when, in fact, there were no bank investigators or law enforcement officers
conducting investigations and, thereafter, BECKFORD and MAXWELL and their co-
conspirators misappropriated the victims' funds.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Conspiracy to Commit Money Laundering)**

3.      From at least in or about January 2019 through the present, in the Southern District of New York and elsewhere, JASON BECKFORD and ASHANTIA MAXWELL, the defendants, and others known and unknown, willfully and knowingly, combined, conspired, confederated and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957.

4.      It was a part and an object of the conspiracy that JASON BECKFORD and ASHANTIA MAXWELL, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct  and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

5.      It was further a part and an object of the conspiracy that JASON BECKFORD and ASHANTIA MAXWELL, the defendants, and others known and unknown, would and did knowingly engage and attempt to engage in monetary transactions, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, the transfer of funds in amounts greater than $10,000, to bank accounts in Japan, with proceeds derived from wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

6.      I have been a Special Agent with the USAO since 2015.  From 2002 to 2015, I was a Special Agent with the Department of Homeland Security.  During the course of my career, I have participated in hundreds of fraud investigations and in the arrests of numerous individuals charged with wire fraud, money laundering, and conspiring to commit those offenses, among other things. I have been personally involved in the investigation of this matter. I base this affidavit on my training and experience, my personal knowledge as well as my conversations with other law enforcement officers, other individuals, and my examination of various reports and records.

7.      Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during this investigation.

Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## **Background of the Fraud**

8.      Based on my interviews of victims, my review of bank records, and my review of electronic communications and documents, I have learned that from at least in or about January 2019 through the present, a group of individuals has been contacting victims all over the United States and inducing them to transfer their money out of their own bank and investment accounts by making false statements and representations to the victims, including, among other things, (i) claiming they are bank investigators and/or law enforcement officers who need the victims to assist them in conducting confidential investigations; and/or (ii) claiming the victims' bank accounts have been compromised and the victims need to transfer their money out of their accounts to protect it from loss. Thereafter, victims' funds are deposited into bank accounts in other people's names, and, among other things, wire transferred to bank accounts in Japan, withdrawn in cash from ATM machines in Jamaica, and used to make purchases in Jamaica and elsewhere via debit cards. In addition, fraudulent charges are being made using victims' credit cards.

9.      Based on information obtained during the investigation, there appear to be over 100 victims who have been defrauded out of over $6 million.

10.      During the investigation, we executed search warrants of two TextNow accounts used by the perpetrators to communicate with Victim-1 and other apparent victims. In addition, we executed search warrants on Apple iCloud accounts that contain data back-up from the account users' iPhones. One Apple account is subscribed to Oshane Mullings and has a verified cellphone number containing an area code in Jamaica and ending in 2150 (the "Oshane Mullings iCloud Account"). The two other iCloud accounts were subscribed to two coconspirators ("CC-1 and CC-2") and their iCloud accounts are referred to individually as "CC-1 iCloud Account" and "CC-2 iCloud Account". All three iCloud Accounts are referred to collectively as the "CC iCloud Accounts." A search of the CC iCloud Accounts revealed numerous text and voice exchanges among Mullings, using the cellphone for the 2150 number (the "2150 iPhone"), and his coconspirators, in which they discussed defrauding Victim-1 and other victims.  In addition, the Mullings iCloud Account contained images of: Mulling's passport and driver's license; documents that appear to be scripts for use in perpetrating the fraud, one of which was entitled "Fraud Script;" and lists of names and contact information that appear to be lists of potential victims to contact to defraud. The identification documents confirm other information obtained during the investigation that indicates Mullings is a Jamaican national who resides in Jamaica.

11.      On February 23, 2026, Mullings was arrested, pursuant to a Complaint issued in the U.S. District Court for the Southern District of New York, charging him with conspiracy to commit wire fraud and money laundering, in violation of Title 18, United States Code, §§ 1349 and 1956(h).

**Victim-1**

12.    Based on information provided by an 84-year-old victim ("Victim-1") and her son, I have learned that, in or about October 2022, Victim-1 received a telephone call from an individual who identified himself as a member of the fraud department of her bank and told her the bank was conducting an undercover investigation and needed her help in connection with a criminal case in the Eastern District of New York involving an Adrian Lawrence. She was instructed that the investigation was so confidential, even other bank employees did not know about it, and she should not tell anyone about it. Victim-1 communicated with two men, through voice calls and text messages, who identified themselves as "Steve Baxter" and "Trevor Bingley."

13.    Based on the investigation, I have learned that to call and text Victim-1, "Baxter" and "Bingley" used two phone numbers that were each associated with TextNow accounts. TextNow is a Voice over Internet Protocol (VoIP) service that allows users to text and call any number in the United States and Canada.  It provides users with a 10-digit phone number that can be used on any smartphone, tablet, or desktop computer with an internet connection.

14.    According to Victim-1, her son, and bank records, between in or about October 5, 2022 and in or about July 2023, Victim-1 provided approximately $1.5 million to the perpetrators, mostly by drawing checks on her own accounts and depositing them into other peoples' bank accounts at the instruction of "Steve Baxter" and "Trevor Bingley." For example, on or about June 14, 2023, Victim-1 wrote a check from her retirement account in the amount of $37,000 that was deposited into a third party's bank account at a bank branch in Dutchess County, New York. Victim-1 also withdrew cash from her bank account and left it on the porch of her home to be picked up and, on one occasion, she brought cash to an individual who met her outside an Ulster County post office. There were also fraudulent charges to Victim-1's credit cards.

15.    Based on my review of text exchanges in the Mullings iCloud Account, Mullings and CC-1 appear to have been posing as "Trevor Bingley" and "Steve Baxter" and communicating directly with Victim-1. On or about October 23, 2022, Mullings, using the 2150 iPhone, sent CC-1 a screenshot of text exchanges with Victim-1 from that day. In the text exchanges, Victim-1 complained about her account being overdrawn and it is apparent that "Trevor" was impersonating a bank employee as he told her "I will be in office early tomorrow morning to get it resolve (sic).  My humblest apologies [Victim-1]."  I found the same text exchange in one of the TextNow accounts the perpetrators used to communicate with Victim-1.

16.    On or about November 14, 2022, Mullings, using the 2150 iPhone, sent CC-1 a screenshot of text exchanges with Victim-1 from that day.  In the text exchanges, Victim-1 told "Trevor" "Spoke with Steve.  Sure he told you.  Not really OK this is really getting to me – tired of everything (running around and funds being removed from my accounts and credit card etc. hope it ends soon (sic)".  He replied "yes it will.  I will call you when I get some time."  This exchange was also found in one of the TextNow accounts the perpetrators used to communicate with Victim-1.

17.    In addition to the text messages exchanged with Victim-1 above, we found

numerous text messages in CC-1's and CC-2's iCloud Accounts, in which all three coconspirators discussed picking up cash from Victim-1, instructing Victim-1 to withdraw money from her accounts and deposit it into other people's bank accounts, and their purchases of airplane tickets, iPhones, and other items using Victim-1's money. We also found screenshots of Victim-1's on-line bank account in the iCloud accounts.

18.     Bank records confirm that Victim-1 wrote checks drawn on her own accounts and the checks were deposited into other people's bank accounts, including accounts in the name of the defendant, ASHANTIA MAXWELL. Bank and Zelle[1] records reveal that after being deposited into those bank accounts, Victim-1's money was transferred to, among other things, bank accounts in the United States and Japan that were in the names of various people and entities. Victim-1's money was also withdrawn in cash from ATM machines in Jamaica and used to make purchases in Jamaica via a bank debit card.

19.     For example, according to bank records, on or about November 7, 2022, Victim-1 withdrew $50,000 from her bank account and deposited it to an account in the name of a third party. From there, $30,000 was transferred to a bank account in the name of the defendant, ASHANTIA MAXWELL, and then $24,000 of that was transferred from the MAXWELL bank account to a bank account in Japan. In CC-1 iCloud Account, we found an image of a bank wire transfer receipt reflecting a transfer of $24,000 from MAXWELL's account to that same bank account in Japan, on November 19, 2022.  The receipt is linked to a phone number with the area code 876 (the "876 Number").

20.     A search of the CC iCloud Accounts revealed that the coconspirators had numerous communications relating to the fraud and laundering of the fraud proceeds, including communications with the 876 Number and a phone number with the area code 516 (the "516 Number"). The text messages exchanged with the 876 Number and the 516 Number relate to, among other things, the deposit of victims' money into the bank account of the person using the 876 Number and 516 Number as well as third party bank accounts, and the wire transferring of victims' money out of those accounts and into bank accounts in Japan.

21.     The 876 Number is identified in CC-1's phone contacts as "2J's Auto Sales" and is listed as the business phone number for 2J's Auto Sales on Google. The contact for the 876 Number also notes the additional name "Jason Mart".  The 876 Number is identified in CC-2's phone contacts as 2J's Auto Sales and notes the additional name "Jason CarMart". The 516 Number is identified in CC-2's phone contacts as "Jason Beckford NY". For the reasons discussed below, I believe the person communicating using the 876 Number and the 516 Number was the defendant, JASON BECKFORD.

22.     According to Apple records, the 516 Number is the verified phone number for an iCloud account and the Apple ID and verified email address for that account is

---

[1] According to Zelle's website, to send money using Zelle, users enroll their email or U.S. mobile number through their mobile banking app or with the Zelle app. They enter an email address or cellphone number of the recipient, enter the amount to send, and if the recipient is already enrolled with Zelle, the money will go directly into their bank account. If the recipient is not enrolled, they will get a notification explaining how to receive the money. https://www.zellepay.com/

jasonbeckford89@gmail.com. The subscriber is JASON BECKFORD. The 876 Number is the verified phone number for two iCloud accounts. One has the Apple ID and verified email address 2jsautosales1@gmail.com and the daytime phone number identified is the 516 Number. The Apple ID and verified email address for the second account is beckfordjason92@gmail.com and the subscriber is JASON BECKFORD. The billing name on all three accounts is JASON BECKFORD.

23.     Communications found in CC iCloud Accounts reveal that the defendant, JASON BECKFORD, was using the 876 Number and the 516 Number. On or about January 5, 2023, in a voice message from the 876 Number to CC-1, a man asked CC-1 for the name on his account. After CC-1 provided his own name, a screenshot was sent from the 876 Number to CC-1 showing a bank record of a transfer to CC-1 in the amount of Jamaican Dollars ("JMD") 1,400,000. The screenshot indicates that the defendant, JASON BECKFORD, was the owner of the account from which the money was transferred.

24.     Further evidence indicating the defendant, JASON BECKFORD, was using the 876 Number and the 516 Number is that on or about August 9, 2023, CC-1 sent a text message to the 876 Number stating that he wanted to meet up that day and the recipient replied: "Jus reach New York bro". According to U.S. Customs and Border Protection records, JASON BECKFORD arrived at JFK airport from Kingston that day. In addition, on or about October 4, 2024, in a text exchange over the 516 Number, CC-2 referred to the person with whom he was communicating as "2J's Auto." Finally, according to bank records, JASON A. BECKFORD had an account there ("JB Account-1"), which had the same mailing address as the 2Js Auto sales address provided to Apple, his birth date, and his social security number. According to records of a second bank, JASON ANTHONY BECKFORD also had an account there and used the same social security number to open that account ("JB Account-2").

25.     As further evidence that the defendant, JASON BECKFORD, is the user of the 876 Number and the 516 Number and the owner of JB Account-1 and JB Account-2, in 2021, on the month and day of the birth date BECKFORD provided to open his bank accounts, CC-1 sent a text to the 876 Number stating, "Bless up pan e strong", which, according to a Google translation, is a Jamaican Patois phrase used to wish someone a blessed and happy birthday. CC-1 received the response, "Respect bro".  On the same day in 2024, CC-2 texted "Birthday blessings bro!" to the 516 Number and received the response "Respect my bro" in return.

26.     Returning to the $24,000 receipt referred to in ¶ 19, records we obtained from Victim-1's bank confirm that the source of the funds was Victim-1. On that date, CC-1 texted the defendant, JASON BECKFORD, over the 876 Number, in Jamaican Patois: "soon shot the receipt" followed by "So member bricks alone me want". Based on my experience and my review of text messages in the CC iCloud Accounts, I believe "bricks" refers to cash. BECKFORD replied in a voice message something about "24".  Later, there is a voice message in which CC-1 told BECKFORD, in sum, to check the receipt before "the catty" left the bank and BECKFORD replied, "It good". Based on the investigation, I have learned that the coconspirators regularly used women to make the deposits into third party accounts. Based on a translation obtained from an on-line Jamaican Patois dictionary as well as information obtained during the investigation, I understand that "catty" is a slang term for a female. Based on my experience and the information obtained during the investigation, I believe CC-1 and

BECKFORD were discussing the deposit of fraud proceeds and that after BECKFORD received the proceeds, CC-1 wanted him to provide him with cash.

27.     In or about January 2023, CC-1 and the defendant, JASON BECKFORD, exchanged texts, in Jamaican Patois, over the 876 Number. On or about January 6, 2023, BECKFORD asked if "Ben have the food?" and CC-1 replied, "Me make him give a catty lastnite". Based on the investigation, I believe that BECKFORD was asking whether a co-conspirator has fraud proceeds and CC-1 replied that he had him give the money to a woman the previous evening. Later, CC-1 asked for "information" and BECKFORD sent routing information for a bank account in Japan ("Japan Account-1"). On the same day, $23,000 in cash was deposited into a bank account in the name of the defendant, ASHANTIA MAXWELL ("AM Account-1"). On or about January 9, 2023, CC-1 texted "Catty gone now". Later, CC-1 texted BECKFORD, "Me would a jus take 1 mill cash n the 1373 u jus transfer it to me account". On the same day, MAXWELL wired $16,950 out of AM Account-1 to Japan Account-1. Based on my review of the cocoonspirators' communications, they typically use an exchange rate of approximately JMD 140 to $1. Based on that exchange rate, the $16,950 would be approximately JMD 2,373,000. Based on my review of these texts, I believe that they were discussing victim funds that got deposited into MAXWELL's bank account and then transferred to Japan Account-1 and that of the approximately $16,950 in cash that was deposited and transferred, CC-1 was instructing BECKFORD that CC-1 would take JMD 1 million of that money in cash and have JMD 1,373,000 transferred to one of his bank accounts in Jamaica. An image of a bank record reflecting the transfer of the $16,950 to Japan Account-1 was found in CC-1's iCloud Account. It was electronically linked to the 876 Number.

28.     According to my review of bank records, on or about May 15, 2023, $30,000 of Victim-1's money was transferred out of her bank account and into a bank account in the name of the defendant, ASHANTIA MAXWELL. Thereafter, it was transferred to an account at a different bank in ASHANTIA MAXWELL's name ("AM Account-2") and, on or about June 14, 2023, $29,955 was wire transferred to Japan Account-1. Among the wire transfer records maintained by the bank is a form indicating that ASHANTIA MAXWELL wired $29,955 to Japan Account-1 and in the details, it reads "Purchase Car" and "BMW."

29.     At around the same time, there were text messages between CC-1 and the defendant, JASON BECKFORD, over the 876 Number in Jamaican Patois. On or about June 13, 2023, CC-1 wrote "Ago mek she do 30g", to which the 876 Number replied "Mad". Based on the investigation, I believe they are referring to the $30,000 of Victim-1's money referred to in the paragraph above.

30.     On or about June 14, 2023, CC-1 texted, in Jamaican Patois, to the 876 Number: "The catty inna the bank". After receiving an unidentified voice text from the 876 Number, CC-1 texted, in Jamaican Patois: "Thm ppl yaa  ask one bag a question" ; "If thm knw sue a send money n Wah kind a car 🚗" ; "Teuxme tell her say is a car mart". Based on translations from an on-line Jamaican Patois dictionary and my review of evidence in the investigation, I believe CC-1 is explaining that a woman (likely the defendant ASHANTIA MAXWELL, whose account the $30,000 was deposited into) was at the bank and being questioned about the use of the $30,000 wire transfer to Japan Account-1. I also believe that, to provide the bank with acceptable

answers to those questions, CC-1 was asking the defendant, JASON BECKFORD, what kind of car she should tell the bankers she was going to purchase with the money.

31.    Approximately ten minutes later, CC-1 forwarded two texts containing documents that are not accessible through the texts. However, we found three images that were electronically linked to the 876 Number, in CC-1's iCloud Account. The first contains the banking details for sending a wire transfer to Japan Account-1, including the bank branch, account name and number and bank routing number. The second and third documents are images of bank records containing the wire transfer information used to order the transfer of $29,955 from AM Account-2, in Mt. Vernon, NY to Japan Account-1. All three documents contain the same beneficiary account number. According to bank records, AM Account-2 was opened in Westchester County, New York, on or about May 30, 2023, MAXWELL was present at the opening and provided a New York State photo identification, her social security number, date of birth and address.

32.    Meanwhile, according to Victim-1's son, Victim-1 received a purported $3,000,000 cashier's check that, she was told, was to reimburse her for the money she provided and some extra "for her troubles."  According to Victim-1, she thought the $3,000,000 check was being given to her as a "reward" for her assistance and she was instructed not to deposit the check until the investigation was over.

33.    Victim-1's son also provided a letter and invoice Victim-1 received on or about May 24, 2023, from a purported judicial clerk in Fort Myers, Florida. Both documents displayed fraudulent letterhead of the United States District Court for the Southern District of New York. Among other things, the letter thanked Victim-1 for "aiding in the process of apprehending and convicting some top profiled criminal who were apart of numerous fraud schemes." (sic). The invoice contained purported fees owed to the court. The letter was forwarded from an email account, that, based on our investigation, is tied to the perpetrators.

34.    According to Victim-1's son and Victim-1, after flagging suspicious activity in Victim-1's bank account, a bank representative contacted her county's Adult Protective Services ("APS") and in or about July 2023, APS contacted Victim-1's son. Victim-1's son then confronted his mother, but she was reluctant to explain what was happening because she believed the Bank-1 investigation was real and she had been instructed not to tell anyone about it. Victim-1's son subsequently contacted the New York State Police. Victim-1 told the perpetrators she was talking to the New York State Police

35.    According to Victim-1 and a New York State Police report, on or about July 31, 2023, Victim-1 met with New York State police officers and provided information about her banking activities, credit card transactions and interactions with the perpetrators.  A New York State Trooper informed her the $3,000,000 check was not genuine and she realized there was a fraud.

36.    As noted above, Victim-1 told the perpetrators that she was speaking with the New York State Police. Subsequently, Victim-1 was interviewed about the fraud for a local news report. Based on our review of communications in the co-conspirators' iCloud Accounts, on or about November 2, 2023, CC-2 received a link to a video of the local TV news report attached to

a text message and responded, "My god". In CC-2's iCloud Account, we found a text message with the link to the video that CC-2 received and apparently forwarded to others.

37.    The next day, CC-1 received the following text message, which was found in CC-1's iCloud Account:



38.    I believe that text message was from the defendant, ASHANTIA MAXWELL, because, based on my review of records regarding bank accounts in MAXWELL's name, the phone number used to send the above texts is the same phone number used to open up bank accounts in her name. I also believe, based on my review of text messages in this case and a translation of Jamaican patois, MAXWELL is stating that she was going to be the first one to get arrested.

## Victim-2

39.    I interviewed Victim-2 who resided in California.  According to Victim-2, in or about April 2024, he was contacted on his home phone by a "Steve Baxter," who claimed to be from a particular credit card services company, informed Victim-2 his account was compromised, and transferred Victim-2 to a "Phil Lamar," who represented he was with the fraud division of Victim-2's bank. "Lamar" instructed Victim-2 to make wire transfers to a holding account at another bank to protect Victim-2's funds. Victim-2 also spoke with two purported FBI employees, a "David Peck" and a "Marjorie Coughlin." "Peck" provided instructions on where Victim-2 should send his money and "Coughlin" told him they were involved in an undercover operation, and he should not contact the FBI to ask questions.

40.    According to Victim-2, between April 25, 2024 and September 3, 2024, on the instruction of the perpetrators, he transferred over $1 million – his retirement savings -- out of his account. With each transaction, Victim-2 faxed wire transfer confirmations to a number the co-conspirators provided to him. Victim-2 provided those records to law enforcement. We also found images of some of Victim-2's wire transfer records in Mullings's iCloud Account. They reflect that most of Victim-2's money was transferred from Victim-2's bank account to accounts in Japan, including Japan Account-1. In addition, we found wire transfer information for Japan Account-1 in CC-1's iCloud Account that are linked to the 876 Number.

41.    Other electronic evidence also connects the defendant, JASON BECKFORD, and other coconspirators to Victim-2. Text messages found in the CC iCloud accounts included messages among the co-conspirators in which they sent each other fraudulent email accounts to use to communicate with Victim-2; Victim-2's email address; and messages with wire transfer instructions to send to Victim-2. In one text message, on or about June 20, 2024, a co-conspirator

sent Mullings bank information for a wire transfer to an account in Japan and Mullings responded, "Let me know if you call the man so I can know what's what." Based on my review of the texts and information learned during the investigation, I believe "the man" to whom he is referring is Victim-2.  On or about July 2, 2024, Victim-2 wire transferred $80,000 to Japan Account-1. That transfer did not go through.  In a text message on or about July 9, 2024, MULLINGS instructed another co-conspirator to "Fix up this and send to [Victim-2's first name]."  On the same day, Victim-2 wire transferred $100,000 to Japan Account-1.

## Other Victims and Transactions

42.    I also interviewed Victim-3, who resided in California. Victim-3 disclosed that he and his wife were contacted by a "Peter Logan," who claimed to be the fraud manager at their bank and said their personal information was involved in a big investigation and he wanted them to be part of it. Logan instructed them to send their credit cards to an address in Florida and to send money, via cashier's check, for "safekeeping." Based on my review of bank records, on or about September 9, 2024, Victim-3 purchased a cashier's check in the amount of $29,600.50 and deposited it into JB Account-2, the defendant, JASON BECKFORD's account. On or about September 17, 2024, $18,000 was transferred to Japan Account-1.

43.    In an earlier transaction, on or about April 23, 2024, CC-1 and the defendant, JASON BECKFORD, exchanged texts using the 516 Number in which, based on my experience and evidence obtained during the investigation, they discussed the deposit of fraud proceeds, in the form of a cashier's check, into JB Account-2. In the texts, BECKFORD provided CC-1 with account and routing numbers for JB Account-2, CC-1 texted back to BECKFORD "cashiers" and "19,000", and BECKFORD responded "Mad".  According to bank records, on or about April 24, 2024, a $19,000 cashier's check from another victim was deposited into JB Account-2. On the same day, BECKFORD sent CC-1 a screenshot indicating his account received $19,000.

44.    Finally, on or about November 12, 2024, a cashier's check for $9,500 purchased with money from another victim interviewed during this investigation was deposited to JB Account-2. On or about November 14, 2024, $6,580 was transferred to Japan Account-1. The

amount transferred to Japan Account-1 appears to represent the amount remaining after
BECKFORD retained a 30% cut.

WHEREFORE, I respectfully request that warrants be issued for the arrests of
JASON BECKFORD and ASHANTIA MAXWELL, the defendants, and that they be arrested
and imprisoned or bailed, as the case may be.

/s/ Sean Smyth (by VR with permission)

SEAN SMYTH
Special Agent
United States Attorney's Office for the
Southern District of New York

Sworn to before me by reliable electronic means
this 25th day of February 2026

THE HONORABLE VICTORIA REZNIK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK